Chief Justice Robertson
delivered the Opinion of the Court.
Charles N. Perkins having, in 1828, mortgaged to Marcus Huling, all his slaves, and household furniture, stock, and other personal property, to an apparently considerable amount, for the ostensible purpose of securing the payment of a promissory note for about thirty dollars, and of an alleged debt of one thousand dollars, and to indemnify him as a surety for Perkins, in a note for about one hundred and fifty dollars, to the Bank of the Commonwealth — Huling, some time before the day of forfeiture, filed a bill in Chancery, for a foreclosure and sale, and for an injunction restraining the removal of one- of the slaves (Henry) by McWhorter, who had, not long after the- date of the mortgage, bought the equity of redemption to that slave, under a fieri facias on a judgment which he had obtained against Perkins, on the day of the delivery of the mortgage. With the consent of Perkins, a foreclosure and sale having been decreed, as much of the mortgaged property was sold as made about eight hundred dollars; and thereupon, Huling filed a supplemental bill against McWhorter, praying for a *349 surrender and sale of Henry. In his answer to that bill, McWhorter alleged that the mortgage was fraudulent; and afterwards, in a supplemental answer, he alleged that since the filing of his first answer to the supplemental bill, he had, for the price of thirty dollars, bought the absolute title to Henry, at a sheriff’s sale, under a fieri facias against Perkins, and in favor of one Ray, a judgr ment creditor of Perkins.
Where a plaintiff in an execution has it levied on an equity of redemption,he recognizes the mortgage as valid; and if he buys the equity at the sheriff’s sale,he takes the place of the mortgagor, who is estopped from attacking,as fraudulent, the mort gage.
A judg’t creditor Mlorabfe^mortgage, levy on the it;°andiftherete a pending suit in may become a P?rty.> and assert his right, in the same suit.
The holder of a» equity ofredemptionmaybuy the m?rtgaged prop-erty when it is sold under execution, and regardless of the mortgage; but his purchase will enure to the benefit of the whole title — to the mortgagee’s interest, as well as his own. He will thus hold the title acquired by the purchase, as a trustee; and if it be a superior title, it will give him a prior right to, and lien on, the property, to the amount of his purchase; and, in asserting that right, he may attack the mortgage, and show, that, it is so far, fraudulent. ’
The Circuit Court decreed the surrender and sale of Henry, without regard to the charges and claims made by McWhorter. And that decree is now called in question.
Having recognized the validity of the mortgage, by subjecting only the equity of redemption to sale under his own execution, and having, for an inconsiderable sum, bought that equity himself, McWhorter took the place of Perkins in relation to the slave Henry, and is, in that attitude alone, estopped to deny that it was bom fide and valid as between mortgagor and mortgagee.
And having thus bought and held under the mortgage, and subject to it, and moreover, claiming, as he then erroneously did claim, the absolute right to Henry, he should not be permitted to assert, in opposition to the title of the mortgagee, an absolute adversary right, derived from a stranger, without the privity or consent of the mortgagee.
But if, as charged, the mortgage was only colorable, Ray, as a judgment creditor of the mortgagor, had a right to disregard it, and to subject the mortgaged property to the satisfaction of his debt; and had he himself bought Henry under his execution, pendente lite, he might, by becoming a party to the suit, have sustained his purchase, and, to that extent, have invalidated the r 7 7 7 mortgage.
And although McWhorter was in such an attitude as . . , n . „ . , not to be able to acquire, as Ray or a stranger might have done, an absolute title by purchasing under the ex-J 1 ° *350 ecution, nevertheless he had a right, for the protection' of his own equity and the benefit of the mortgagee under whom he was holding, to buy the title sold under Ray's execution, just as the vendee of an equitable right to land might purchase a superior and adverse legal title.
Where mortgaged property is sold absolutely, under execution, 8r the purchaser shows the mortgage to he fraudulent, and holds the property, a previous purchaser of the equity of redemption may, in general, be entitled to restitution of his purchase money from the mortgagor; but il the holder of the equity himself becomes the purchaser, no such right accrues to him-1Me supra.
With whatever motives, or for whatever purpose he may have made the purchase, he should be deemed a trustee for the benefit and security of the title under which he acquired the possession, and under which he held at the date of his purchase under the execution-And, in that character, or under the equitable doctrine of subrogation, he is entitled to a lien on the slave, to-the extent of the price which he paid to Ray; and thus far he has a right superior to that of the mortgagee, and. may, for the purpose of obtaining restitution of the sum paid to Ray, show that Ray had a right to subject the-slave to sale notwithstanding the mortgage.
Therefore, for this purpose, and to this qualified extent,. McWhorter had a right to show that, as to Ray, the. mortgage was fraudulent, and that, therefore, as against himself and the mortgagor and mortgagee, a sale-of Henry,, in virtue of Ray’s execution, might have vested in a purchaser an absolute and indefeasable title, — and that consequently, having himself thus bought in a superior title, he is entitled to, at least, a restitution of what he gave.
If the mortgage were fraudulent as to Ray, and if he, or a stranger, had bought Henry under his execution; McWhorter might have been entitled in equity to a vacation of his purchase of the equity of redemption, and to a restitution from Perkins of the amount of the judgment which had been nominally satisfied by a delusive purchase of that which was afterwards ascertained not to exist. But, as, by his own purchase under Ray’s execution, he has not merged his equity of redemption, or rendered it ineffectual, and is, moreover, entitled to a reimbursement from the mortgagee of the amount which he paid to Ray, he still maintains the relation in which his purchase of the equity of redemption first placed him; and therefore he is now no more a creditor of Perkins than he was when his judgment against him was first satisfied by that purchase.
Slaves and other things are mortgaged. The equity of redemption in one of the slaves is sold under execution, $/■ boughtbythe execution creditor. Another ex’on is then levied, regardless of the mortgage, on the same slave, who is solid absolutely, and bought by the same purchaser. The mort gage is held to be fraudulent as to the creditor in the latter ex’on. As to the condition and rights of the purchaser,Hide supra. In a suit, in such case, between him and the mortgagee, the mortgagor should be a party ; all the mortgaged property should be sold, and the proceeds applied — first, to reimburse the purchaser for the amount of his last purchase — if that slave brings so much; then to pay off the mortgage (which is good as between the parties to it, and as to the purchaser of the equity, as a quasi party;) the balance,if any,to be divided between the mortgagor Sr the purchaser, as vendee of a part of the equity, according to their respective interests.
Nevertheless, if the mortgage were fraudulent as to Nay, and the sale of Henry, in the event of a Sale of him under the mortgage, shall not leave, after satisfying the ■mortgage, as much as the amount of McWhorter’s judgment which he gave for the equity of redemption, he would be entitled, out of the proceeds of thfc sale, to the ■amount of the deficit, because, had he not made the purchase under Ray’s execution, he would, in consequence of a purchase by some other person, have lost the benefit of his equity of redemption, and would thereby have again become a creditor of Perkins; and being thus res tored to his original rights of j udgment creditor, might have made his debt out of the residue of the mortgaged property. He should not therefore lose his debt, if Plenry 'be worth as much as the amount of it. But, if the equity of redemption shall be of greater value than the sum which he gave for it, he will be entitled to that value; and therefore, if all the mortgaged property, when sold or properly accounted for, shall produce more than the mortgage debt and the amount of McWhorter’s judgment, he will be entitled to his just ratio of the surplus, by adjusting, according to equitable principles, his ulterior rights, as purchaser of the equity of redemption to a part of the mortgaged property, and those of Perkins, as the holder of the equity of redemption to the residue. And, in any event, he is entitled to the sum paid on Ray’s execution, and this is to be charged to the mortgagee, to whose benefit the purchase enured.
As McWhorter had, for the purpose, and for the reasons and to the extent thus explained, aright to impeach the-mortgage, it is necessary that we shall decide the question which he has, in that respect, raised. And this we will do by only saying, that the facts exhibited in the record clearly show, in our opinion, that the mortgage should be deemed fraudulent as to the bon a fide creditors of Perkins, the mortgagor — at least to the extent of the alleged consideration of one thousand dollars.
The inevitable consequence of the foregoing view of the case, is, that the decree of the Circuit Court is improvident, and therefore erroneous. McWhorter having had a right to show, that the mortgage was fraudulent, *352 for the purpose of entitling himself to restitution of what he paid to Ray; and, on establishing that fáct, being entitled to indemnity for the amount given for the equity of redemption, and also, to the full benefit of that equity, if, beyond the measure of indemnity, it shall be available, he should be first paid, or secured in the payment of the sum paid to Ray; and then, if Henry bo sold for satisfying the residue of the nominal mortgage debt, he is entitled, out of the proceeds, to at least the amount given for his equity of redemption, and to as much more as the value of that equity shall exceed that amount, upon a proper account and settlement among all concerned, and as to all the property which was mortgaged; and it may not be irrelevant here to suggest, that all the mortgaged property, excepting Henry, has not been sold, or otherwise accounted for in this suit. And that, so far as the mortgage debt, which McWhorter’s peculiar attitude precludes him from controverting, may operate as a burthen on the several articles of the mortgaged property, that burthen should be distributive, and should be divided in a just ratio between the mortgagor’s remaining equity of redemption, and that of McWhorter, according to the relative values of the property in which each is interested. But as Perkins may be affected by such a decree as the facts would seem to require on McWharter’s cross bill, he should be a party to that cross bill; and not having been made a party, the cross bill might have been dismissed, without prejudice. But, as it was not so dismissed, the decree might, if unreversed, conclude McWharter’s equity.
Wherefore, the decree is reversed, and the cause remanded for such further proceedings and decree as shall be proper, consistently with the principles of this opinion.